CRAMER *v.* WILSON.

ERROR TO THE SUPREME COURT OF THE STATE OF ILLINOIS.

No. 47.   Submitted November 3, 1904.—Decided December 5, 1904.

Where the trustee in bankruptcy sells the interest of the bankrupt in land, the purchaser acquires only the interest of the bankrupt on the day of adjudication and no interest therein subsequently acquired by him in the property passes by the trustee's deed.

The fact that after the sale and before the subsequent acquirement of interest the bankrupt made an unsuccessful application to have the sale set aside for inadequacy of price is not an adjudication that the bankrupt had an interest in the property sold which passed to the purchaser.

Whether a deed given by a bankrupt a year prior to the adjudication is fraudulent, or whether it was absolute or merely by way of mortgage, leaving him an equity of redemption, are not Federal questions and the decision of the state court is conclusive and cannot be reviewed by this court.

. THIS was a bill originally filed February 1, 1888, in the Superior Court of Cook County by the plaintiff in error, Cramer,

under her then name of Fannie N. Dresser, against her sister, Lilly B. Dresser, Henry H. Gage, Julia Wilson and two others, for the partition of certain real estate in Chicago, for a settlement of equities or liens thereon, for a receiver and for the removal of certain clouds upon complainant's title.

The material facts of the case are as follows: Shortly before the beginning of this suit Fannie N. Dresser was the record owner of the property in question through a patent from the United States. On January 31, 1888, the day before this suit was commenced, Fannie N. Dresser conveyed to her sister, Lilly B. Dresser, an undivided one-third of the property in question. The court found this deed to have been collusive, and executed by an arrangement with the defendant Gage, who held certain tax deeds to the premises found to be invalid, and for the purpose of filing this bill for partition, and the removal of a cloud upon the title caused by another tax deed acquired by Frederick R. Wilson in 1864. His interest in the property was conveyed by him to his sister, Julia Wilson, in 1877. Julia Wilson was made defendant to the bill as the owner of this tax title.

It appeared, however, that Julia Wilson died on December 15, 1887, leaving Frederick R. Wilson her sole legatee and executor. The suit was then abated as to Julia Wilson, and Frederick R. Wilson was substituted as defendant in her place. The deed to this property from Frederick R. Wilson to his sister was a conditional conveyance, but by agreement of the parties it was subsequently treated by them as absolute; and upon the death of Julia Wilson, in December, 1887, the property again became vested in Frederick R. Wilson as her only heir at law and next of kin, and as her sole devisee under her last will and testament. Shortly after the deed to Julia, Frederick R. Wilson went into bankruptcy, August 30, 1878, and Robert E. Jenkins was appointed his assignee. The property was subsequently ordered to be sold, and in 1889 was purchased from the assignee by one Taylor E. Snow for the sum of $250. Both Jenkins, the assignee, and Snow, the purchaser, were

made parties defendants to the bill, and subsequently filed answers and a cross bill.

It appeared that Gage, after the beginning of the suit, bought the interest of Lilly B. Dresser, and also that the purchase by Snow at the bankruptcy sale was made in his interest, so that the real parties to this litigation are Gage upon one side and Wilson upon the other.

Upon the first hearing, the court entered a decree of partition denying Wilson's claim of title, and holding that his interest passed to Snow by the assignee's sale. This decree was reversed by the Supreme Court of Illinois upon the ground that the plaintiff had not proved her title from the Government to the property. Leave was given the parties to amend, and subsequently an amended bill was filed and answered. Upon the second hearing, the court held that the premises were the property of Frederick R. Wilson, and had been his from 1864 until 1877, when he conveyed them to his sister; that at the time of bankruptcy proceedings, in 1878, the title was in Julia Wilson, and that upon the death of Julia Wilson in 1887 the title again vested in Frederick R. Wilson; that at the time Frederick R. Wilson was adjudged a bankrupt Julia Wilson was alive and vested with the title to this property, and that the defendant Snow acquired no title when he purchased all of the estate, real and personal, of the bankrupt, Frederick R. Wilson.

This decree was affirmed by the Illinois Supreme Court, 202 Illinois, 83, and it is to reverse that decree that plaintiffs have taken a writ of error from this court.

*Mr. Frederick W. Becker, Mr. Robert A. Childs* and *Mr. Charles Hudson* for plaintiffs in error:

The points involved in this case are Federal questions. *Williams* v. *Heard,* 140 U. S. 529; *Central Nat. Bk.* v. *Stevens,* 169 U. S. 432, 460; *Dushane* v. *Beall,* 161 U. S. 513; *N. O., S. F. & L. R. R. Co.* v. *Delamore,* 114 U. S. 501; *Chapman* v. *Goodnow,* 123 U. S. 540.

The deed to Julia Wilson was fraudulent and void as against creditors, because absolute in form but conditional in fact, creating a secret trust. *Lukins* v. *Aird,* 6 Wall. 78; *Beidler* v. *Crane,* 135 Illinois, 92, 98; *Bostwick* v. *Blake,* 145 Illinois, 85, 89; *Metropolitan Bank* v. *Godfrey,* 23 Illinois, 579; because colorable; and because voluntary and made while the grantor was insolvent or contemplating insolvency. *Dillman* v. *Nadelhoffer,* 162 Illinois, 625.

Such a deed is void not only as to existing but also as to subsequent creditors. *Bostwick* v. *Blake, supra; Gordon* v. *Reynolds,* 114 Illinois, 118, 127. Hence no right or title passed to the sister by virtue of that deed as against creditors, but upon Wilson's bankruptcy all his original right and title passed to his assignee in bankruptcy.

The Bankrupt Act of 1867 vested in the assignee all property of the bankrupt conveyed in fraud of creditors. Rev. Stat. § 5046; *Holbrook* v. *Coney,* 25 Illinois, 543, 547; *Foraast* v. *Hyman,* 138 Illinois, 423; no judicial determination of that fact was necessary to pass title. *Freeland* v. *Freeland,* 102 Massachusetts, 475.

As to nature of title of assignee in bankruptcy, see *Bouton* v. *Dement,* 123 Illinois, 142; *Choteau* v. *Jones,* 11 Illinois, 300; *Hardin* v. *Osborne,* 94 Illinois, 571. That this asset was not scheduled is immaterial. *Holbrook* v. *Coney,* 25 Illinois, 543.

Two years' limitation as to *suits* in bankruptcy has no application to *sales, Holbrook* v. *Brenner,* 31 Illinois, 501; and if it has, it would only commence to run from the discovery of the fraud. *Beatty* v. *Nickerson,* 73 Illinois, 605; *Dushane* v. *Beall,* 161 U. S. 513. Election to take by assignee, if necessary, shown by sale. *McKinny* v. *Farmers' Nat. Bk.,* 104 Illinois, 130; *Freeland* v. *Freeland,* 102 Massachusetts, 475. All these questions are res *adjudicata* by the denial of Wilson's application to set aside sale, and he is estopped from raising them now, *Bennitt* v. *Star Mfg. Co.,* 119 Illinois, 9; not only as against the parties thereto, but as against all whose interests are involved. *Barney* v. *Patterson,* 6 H. & J. 182, 203;

*Tyler* v. *Tyler*, 126 Illinois, 525; *Jamieson* v. *Beaubien*, 3 Scam. 113; *Rogers* v. *Bent*, 5 Gil. 573; *Kirkpatrick* v. *Clark*, 132 Illinois, 342.

Whether the assignee *lost* his title by *laches* is immaterial; it is enough that he *acquired* title, though but for a day, to interrupt the continuity of Wilson's possession. *C. & A. R. R. Co.* v. *Keegan*, 185 Illinois, 70.

The bankruptcy proceedings had the effect on Wilson's adverse possession of a voluntary conveyance, which breaks the continuity, even if the actual possession be not disturbed. *Gower* v. *Quinland*, 40 Michigan, 572; *Root* v. *Woolworth*, 150 U. S. 401; *Hintrager* v. *Smith*, 89 Iowa, 270; *Oberein* v. *Wells*, 163 Illinois, 101.

The deed to Julia Wilson being unrecorded was not notice, Ill. Rev. Stat., ch. 30, § 30; nor was Wilson's possession of the premises after the conveyance. 23 Am. & Eng. Ency. of Law, 2d ed., 506; *Robertson* v. *Wheeler*, 162 Illinois, 566, 575.

Property fraudulently conveyed clothes the grantee with no ownership as against the creditors of the grantor. 1 Am. & Eng. Ency. of Law, 2d ed., 813 *n.*; *Jones* v. *Wilson*, 69 Alabama, 400; *Townsend* v. *Little*, 109 U. S. 504.

Julia Wilson participated in the fraud, 14 Am. & Eng. Ency. of Law, 2d ed., 271, and is not a *bona fide* purchaser. *Met. Bk.* v. *Godfrey*, 23 Illinois, 579; *Powell* v. *Jeffries*, 4 Scam. 387.

The opinion of the Supreme Court of Illinois ignores the real character of the deed to Julia Wilson, and the effect of the bankruptcy proceedings and the Bankrupt Act upon a conveyance in fraud of creditors. The fraudulent features of the deed could not be eliminated by the alleged subsequent agreement.

The suggestion of collusion is ill timed and inconsistent. The motive in instituting the suit is immaterial. *Trainor* v. *Greenough*, 145 Illinois, 543, 549. The following statutes of Illinois are applicable. Rev. Stat., Ch. 106, §§ 1, 6, 39; ch. 59, §§ 4, 5; ch. 30, § 30; ch. 83, § 1.

*Mr. David K. Tone* and *Mr. George Gillett* for defendant in error:

No Federal question is involved. The state court found that Julia Wilson was the owner of the premises in controversy on August 30, 1878, when this petition in bankruptcy was filed, and that the purchaser took nothing at the assignee's sale. On a writ of error to a state court the findings of fact of the state court are conclusive in this court. *Egan* v. *Hart,* 165 U. S. 188; *Bement* v. *National Harrow Co.,* 186 U. S. 70, 83. A decision of a state court against a party who claims that the title to his demand comes through a bankrupt assignee cannot be reviewed by this court when no construction of such bankrupt act was called in question. *Calcote* v. *Stanton,* 18 How. 243; *Scott* v. *Kelly,* 22 Wall. 57; *McKenna* v. *Simpson,* 129 U. S. 506.

The case should be affirmed on the merits.

The court should refuse to take jurisdiction of a collusive suit prosecuted by a party who has no interest in the controversy as is the case with plaintiff in error. *In re Burdick,* 162 Illinois, 48, 52, 64; *Cleveland* v. *Chamberlain,* 1 Black, 419; *American Wood-Paper* v. *Heft,* 131 U. S. 92; *Dakota Co.* v. *Glidden,* 113 U. S. 222; *The People* v. *Gen'l Elec. Ry. Co.,* 172 Illinois, 129, 143.

That Wilson actually conveyed to his sister is *res judicata* by the final state court judgment. *Wilson* v. *Dresser,* 152 Illinois, 387; *Smith* v. *Neff,* 123 Illinois, 310; *West* v. *Douglass,* 145 Illinois, 164; *McFarland* v. *Washburn,* 26 Ill. App. 355; *World's Columbian Exposition* v. *Lehigh,* 94 Ill. App. 433; *Newberry* v. *Blatchford,* 106 Illinois, 593.

The denial by the District Court of the petition of Wilson to set aside the sale is not *res adjudicata* in reference to Wilson's title, as his present title is based upon a subsequent devise. Julia Wilson was not a party to the bankruptcy proceeding, and hence not bound by it. *Attorney General* v. *C. & E. R. R. Co.,* 112 Illinois, 520, 539; *McCartney* v. *Osburn,* 118 Illinois, 403, 410; *White* v. *Sherman,* 168 Illinois, 589, 612

Plaintiffs in error were not creditors of Frederick R. Wilson, and hence cannot raise the question, as a fraudulent conveyance can only be assailed by *bona fide* creditors of the grantor. As to third persons, who do not stand in the position of creditors of the grantor, such a conveyance is valid. *Fetrow* v. *Merriwether*, 53 Illinois, 275, 279; *Willard* v. *Masterson*, 160 Illinois, 443; *Rappleye* v. *International Bank*, 93 Illinois, 397, 403; 14 Am. & Eng. Ency. of Law, 280c.; *Etter* v. *Anderson*, 84 Indiana, 333, 337.

MR. JUSTICE BROWN, after making the foregoing statement, delivered the opinion of the court.

Upon the first hearing, the Superior Court entered a decree of partition, finding that the Dresser sisters were the owners of the property at the beginning of the suit, through a title derived from the Government; that after the suit was begun Lilly B. Dresser conveyed her interest to Henry H. Gage; that Julia Wilson, to whom her brother, Frederick R. Wilson, had conveyed his interest in the property, died testate, leaving her interest in the property to Frederick R. Wilson, and that this interest subsequently passed to Snow by purchase from the assignee, Jenkins.

This decree was reversed by the Supreme Court, 152 Illinois, 387, which held that there was no evidence of a title in fee in complainants derived from the Government; that, although Frederick R. Wilson showed a deed to himself from the city of Chicago, dated May 24, 1864, and possession under such deed, he conveyed his interest to his sister, Julia Wilson, in 1877; that about a year thereafter he went into bankruptcy, and that at the assignee's sale nothing passed to the purchaser, Snow, but the interest of the bankrupt on August 30, 1878. "But," said the court, "the evidence shows that at that time he had no interest, having more than a year prior to that date, July 6, 1877, conveyed it to Julia Wilson, and the evidence is undisputed as to the fact that she took pos-

session under that deed, and retained it by her tenants until the date of her death, and that her tenants remained in such possession when this suit was begun." The court found that there was nothing to show that Julia Wilson had not died seized of the property, and that it was not until her death in 1887 that defendant became repossessed of it. The case was reversed, and remanded with leave to amend the pleadings and put in additional testimony.

Upon a rehearing in the Superior Court, a decree was entered in favor of the defendant Wilson, establishing his title to the premises, subject to the repayment of certain taxes paid by Gage. Upon the second appeal to the Supreme Court that court held that, it having been shown that defendant and his sister had been in possession of the property for more than twenty years prior to the bringing of that suit, defendant had a good title by limitation, unless it was cut off and defeated by the assignee's sale to Snow; but that as he had sold to his sister, Julia Wilson, in July, 1877, thirteen months before the bankruptcy, and she had taken possession, he had no title, and none passed to Snow by purchase from the assignee.

Complainants, however, took the position that the deed from Wilson to his sister was not absolute, but was made to secure a debt, and was constructively a mortgage, and that an equity of redemption remained in Frederick R. Wilson, which would pass to Snow as purchaser at the time of the assignee's sale. But the court held that, under the arrangement between the parties, the deed became absolute long before the defendant was adjudged a bankrupt. That under the law of Illinois, when land has been conveyed by deed, absolute in form, though intended as security for the payment of a debt, the payment of the debt may be abandoned, and the deed treated as an absolute conveyance, although originally intended as a mortgage, and that such arrangement may be made by parol, and be binding. 202 Illinois, 83.

It thus appears that the case turned upon the validity of the deed from the appellee to his sister, Julia Wilson. It was

insisted that the deed was either fraudulent and void as against creditors, or that a residuary interest remained in Frederick R. Wilson, which would pass under the assignee's sale. This was a local and not a Federal question. The deed, having been made a year before the proceedings in bankruptcy were begun, and eleven years before the commencement of this suit, was not attacked as invalid under the bankrupt law of 1867, then in force, but as a fraudulent conveyance under the state law. The question of fraud was ignored by the state court, although it was directly involved in the issue, and hence must be treated as overruled. It was admitted that, if the property were that of Julia Wilson at the commencement of the bankruptcy proceedings, nothing passed under the assignee's sale; and it was only upon the theory that it was the property of the bankrupt that the assignee could convey anything to the purchaser. To reverse the state court upon this point would be to hold that it improperly construed its own laws with reference to fraudulent conveyances. The assignee's sale as a conveyance of the property of the bankrupt was not attacked in any way. He was a mere conduit through which the interest of Frederick R. Wilson, if he had any for himself or his creditors, passed to Snow. We have repeatedly held that, when the question in a state court is not whether, if the bankrupt had title, it would pass to his assignee, but whether he had title at all, and the state court decided that he had not, no Federal question is presented. *Scott* v. *Kelly,* 22 Wall. 57; *McKenna* v. *Simpson,* 129 U. S. 506. The same principle was applied to a different class of cases in *Blackburn* v. *Portland Gold Mining Co.,* 175 U. S. 571; *De Lamar's Co.* v. *Nesbitt,* 177 U. S. 523. In *Williams* v. *Heard,* 140 U. S. 529, relied upon by the plaintiffs in error, the property in dispute belonged admittedly to the bankrupts, and the question was whether it was of such a character as to pass to their assignee. Of course, this involved a construction of the bankrupt act.

If there be any Federal question, it arises from the denial of the petition of the appellee, filed in the bankruptcy court

September 17, 1889, about two months after the sale was confirmed,.to set aside and vacate such sale for inadequacy of price and want of notice that the sale would take place. It is insisted that this denial was *res judicata* of Wilson's interest in the property, and that the refusal of the court to so treat it denied to the order of the bankruptcy court the full faith and credit to which it was entitled. But on referring to the order of sale of June 27, 1889, we find that the assignee was directed to sell simply "the interest of such bankrupt and of said asssignee," without attempting to adjudicate what that interest was, or whether he had any interest at all. It was left for other courts in other proceedings to determine what his interest or that of his creditors was on August 30, 1878, the day on which he was adjudged a bankrupt. That interest would, of course, pass to the assignee. We have already seen that the Supreme Court found he had none upon that day. The District Court authorized the sale of such as he had, but made no attempt to determine or guarantee that he had an interest that would pass by the sale. The refusal to set aside the sale was largely a matter of discretion, and may have been justified by the consideration that the bankrupt was not injured by the fact that it had taken place. There was certainly no attempt to adjudicate the amount of his interest.

The circumstance that nine years after his adjudication in bankruptcy he took title to the property as the devisee of his sister does not lend any significance to the fact that at the date of his bankruptcy his sister was the owner, in possession by tenants, and that the Supreme Court found her title to be absolute.

The decree of that court is, therefore,

*Affirmed.*