## RECTOR *v.* CITY DEPOSIT BANK COMPANY.

ERROR TO THE SUPREME COURT OF THE STATE OF OHIO.

No. 137.   Submitted December 12, 1905.—Decided February 19, 1906.

Where a trustee in bankruptcy seeks to recover in a state court what is asserted to be an asset under the bankrupt law, the denial of the asserted right is a denial of a right or title specially claimed under a law of the United States, and presents a Federal question, reviewable in this court by writ of error under section 709, Rev. Stat.

While a certificate of a court of last resort of a State may not import into a record a Federal question not otherwise existing, such certificate serves to elucidate whether such Federal question does exist.

While this court is bound by the facts found by a state court, where that court does not find the facts but instructs a verdict on the ground that the evidence justifies no other verdict, a question of law, reviewable by this court, is raised as to whether the jury could have found otherwise under any reasonable view of the evidence.

Where a bank fails and the clearing house having notice of such failure returns all of the debit items to the other banks it cannot apply the credit item to payment of claims of other banks against the insolvent bank; under the provisions of the bankrupt act forbidding preferences, it is its duty to pay those funds over to the trustee in bankruptcy.

See also *Rector* v. *Commercial National Bank, post,* p. 420.

THE facts are stated in the opinion.

*Mr. D. F. Pugh* and *Mr. Fred C. Rector,* for plaintiff in error: On the question of jurisdiction.

The defendant in error's defense is that the money never passed to the trustee of the bankrupt; that the clearing house had the right to pay it to the defendant in error as a creditor of the bankrupts. The plaintiff in error maintained that the transfer and payment of the money to the defendant in error by the clearing house amounted to a voidable preference under the United States bankrupt law, and that he as a trustee was entitled to have the moneys or the credit paid to him by the clearing house. The state courts, by their decisions, denied to the plaintiff in error as trustee his right to the moneys or credits which he derived from the bankrupt law.

When the question in a state court is not whether if the bankrupt had title, it would pass to his assignee under the bankrupt act, but whether he had title at all, and the state court decides that he had not, no question of which this court can take jurisdiction under section 709 of the Revised Statutes is presented. *Scott* v. *Kelley*, 22 Wall. 57.

But if the title of the bankrupt is not questioned, and if the question is whether the property passed to his trustee under the bankrupt act, then this court has jurisdiction. *McKenna* v. *Simpson*, 129 U. S. 506; *Cramer* v. *Wilson*, 195 U. S. 408; *Thompson* v. *Fairbanks*, 196 U. S. 516, distinguished. See also *Williams* v. *Heard*, 140 U. S. 529; *Dushane* v. *Beall*, 161 U. S. 513.

It is not necessary that the petition should aver, in so many words, or positively, that the right which the petitioner claimed was derived from or under the bankrupt law; but it is sufficient, if it is clear, from the facts stated, by just and necessary inference, that the question was made, and that the court below must, in order to have arrived at the judgment pronounced by it, have come to the very decision of that question, as indispensable to that judgment. *Crowell* v. *Randall*, 10 Pet. 368; *Miller* v. *Nichols*, 4 Wheat. 311; *Wilson* v. *Blackbird Creek Marsh Co.*, 2 Pet. 245; *Hoyt* v. *Sheldon*, 1 Black, 518; *Maxwell* v. *Newbold*, 18 How. 515.

The motion of the defendant in error to withdraw the case

from the jury was an admission of all the facts which the evidence tended to prove, and there was presented only a question of law to the court.

When a question decided by the state court is not merely of the weight or sufficiency of the evidence to prove a fact, but of the competency and legal effect of the evidence as bearing upon a question of Federal law, the decision may be reviewed by this court. *Dower* v. *Richards,* 151 U. S. 658; *Mackay* v. *Dillon,* 4 How. 421.

The payment to the bank was a preference under the bankrupt law. Sections 60*a,* 60*b,* 57*g.* The fact that the payment was made circuitously was immaterial. A preference was nevertheless given and received. *In re Lyon,* 114 Fed. Rep. 327; *Gibson* v. *Dobie,* 5 Biss. 198; *Crooks* v. *People's National Bank,* 46 App. Div. N. Y. 339.

The clearing house and its manager were agents of all the banks which belonged to the clearing house. The clearing house was created by a voluntary contract entered into between the banks that formed the same. It was a common banker of the members of the association. *Merchants' National Bank* v. *National Bank,* 139 Massachusetts, 513. See also *Yardley* v. *Philler,* 167 U. S. 344, 359.

The bankrupt statute required plaintiff in error to prove that defendant in error had reasonable cause to believe that a preference was intended. No more was required. Section 60*b;* Loveland's Bankruptcy, pp. 468–471. The plaintiff in error was not required to prove a "conscious participation" in the bankrupt and his creditor in giving and receiving a preference. *Pirie* v. *Chicago Title & Trust Co.,* 182 U. S. 438.

The test of a voidable preference is whether or not a transfer or payment will have the effect to pay on one claim a larger dividend out of the estate of the bankrupt than that estate will pay on other claims. It is the effect which it has upon the distribution of the estate of the bankrupt, and not its effect upon the creditor that gives character to the preference. This is the controlling purpose of the statute. *In re Bashline,* 109

Fed. Rep. 966; *Kimball* v. *Rosenbaum Co.*, 114 Fed. Rep. 85; *Pirie* v. *Chicago Title & Trust Co.*, *supra; Toof* v. *Martin*, 13 Wall. 40.

Plaintiff in error could not have maintained an action against the clearing house; the express provision or stipulation in the articles of agreement entered into by the banks composing the clearing house, which expressly provided that "in no case is the association to be held responsible for any loss that may occur," would have defeated such an action.

*Mr. Talfourd P. Linn* for defendant in error:

The record shows that no Federal question occurred to counsel for plaintiff in error until after the decision of the Supreme Court of Ohio.

Having submitted to the jurisdiction of the Ohio courts, and having failed at any stage of the proceedings to indicate to those courts that a Federal question was involved, or that some right or title was claimed under a statute of the United States, plaintiff in error cannot have the decision of the court below reviewed.

In order to entitle him to relief, the record must affirmatively show that the Federal question was raised, or the right or title claimed. *Sayward* v. *Denny*, 158 U. S. 180; *Turner* v. *Richardson*, 180 U. S. 87; *Yazoo &c. R. R. Co.* v. *Adams*, 180 U. S. 1.

The question cannot be raised for the first time in the assignment of error. *Jacobi* v. *Alabama*, 187 U. S. 133; *Johnson* v. *Insurance Co.*, 187 U. S. 491.

Even if the petition filed by plaintiff in error should be considered as if it had directly alleged a preference in violation of §§ 60a and 60b, the facts disclosed by the record do not bring the action within the jurisdiction of this court.

The court will not review on error mere questions of construction of Federal statutes, or applications of facts to those statutes, when the validity of the act or statute is not involved, and where no right to proceed under the statute is

denied by the state court. *Cameron* v. *United States,* 146
U. S. 533; *Choteau* v. *Marguerite,* 12 Pet. 509; *Cook Co.* v.
*Dock Co.,* 138 U. S. 635; *Osborne* v. *Florida,* 164 U. S. 650;
*Kinnard* v. *Nebraska,* 186 U. S. 304.

This question was decided in the recent case of *Thompson*
v. *Fairbanks,* 196 U. S. 516. To the same effect is *Dresser* v.
*Wilson,* 195 U. S. 409.

The decision of the Supreme Court of Ohio confirming the
lower courts, is final, and not subject to review by this court.
*Kaufman* v. *Treadway,* 195 U. S. 271.

The record does not disclose any intention on the part of the
bank to obtain a preference.

An unlawful preference within the meaning of the bank-
ruptcy act, must have been a preference obtained by the
creditor with full knowledge of the insolvency, and with a
deliberate intent to obtain the preference at the expense of
other creditors. Collier on Bankruptcy, 4th ed., 418 *et seq.*

MR. JUSTICE WHITE delivered the opinion of the court.

The firm of Reinhard & Company, composed of John G.
Reinhard and Henry A. Reinhard, carried on a banking busi-
ness in Columbus, Ohio. On April 10, 1900, the firm made a
general assignment under the insolvent laws of Ohio. On the
following day a petition in involuntary bankruptcy under the
laws of the United States was filed against the firm, and on
August 10, 1900, it was adjudged bankrupt, and subsequently
Rector, the plaintiff in error, was appointed the trustee.

In a Court of Common Pleas of the State of Ohio the trustee
began this suit against the defendant in error to recover the
sum of $1,300, which it was subsequently agreed was only
$1,161.74. The petition alleged the adjudication in bank-
ruptcy and the appointment of the trustee, and based his right
to recover upon the ground that on April 10, 1900, the firm had
transferred and assigned to the defendant bank, who had re-
ceived the same the sum of money sued for, which it was

alleged was the property of Reinhard & Company, and, in substance, the payment to the bank was alleged to constitute a voidable preference.

The answer admitted the making of the general assignment, the adjudication of the firm as an involuntary bankrupt, and the appointment and qualification of the plaintiff as trustee. The other averments of the petition were denied.

A trial was had to a jury. At the close of the evidence for the plaintiff the court at the request of the defendant instructed a verdict in its favor and judgment was entered dismissing the action. The Circuit Court of Franklin County affirmed the judgment, which was thereafter affirmed by the Supreme Court of Ohio, without opinion. The Chief Justice of the Supreme Court of Ohio made and the court caused to be filed and entered on its journal the certificate which is in the margin.[1]

---

[1] On motion of the plaintiff in error, Fred C. Rector, trustee, this court orders it to be certified and made part of the record in this case, and the Honorable William T. Spear, Chief Justice of said Supreme Court, does now certify, that in said cause, and on the hearing before this court, it was claimed, contended and alleged by the said plaintiff in error that, on the tenth day of April, A. D. 1900, Reinhard & Company, a partnership, by deeds of its individual members committed an act of bankruptcy, to wit: made a general assignment for the benefit of creditors; that on the eleventh day of April, A. D. 1900, a petition in bankruptcy was filed in the District Court of the United States of the Southern District of Ohio, Eastern Division; that on the tenth day of August, A. D. 1900, said Reinhard & Company were, by said court, adjudged bankrupt, and on September 13, A. D. 1900, said plaintiff in error was appointed trustee thereof; that on the tenth day of April, A. D. 1900, said Reinhard & Company, then being to the knowledge of the defendant in error, insolvent, assigned and transferred to the defendant in error, The City Deposit Bank Company, and that the said last named company then and there received from said Reinhard & Company the sum of $1,161.74 of moneys belonging to said Reinhard & Company; that said assignment and transfer was an unlawful preference, given to the said defendant in error, and violated the provisions of section 60a and section 60b of the United States bankrupt law; that it became and was material to the said cause for this court to determine whether the said sum of $1,161.74 was so assigned and transferred; whether it was an unlawful preference; whether it was a violation of said section 60a and section 60b of the said bankrupt law; and whether the said plaintiff in error, under said law, was entitled to have the said assignment and transfer set

It is contended that this court is without jurisdiction. The argument upon which this proposition is rested is this: First. It is said that whilst in the petition the right of recovery was based upon the ground of fraudulent preference, it was not disclosed therein whether the preference relied upon was in violation of the bankrupt law of the United States or of the insolvent laws of the State of Ohio, and therefore a Federal question was not raised, as it was necessary to specially direct the attention of the state court to such a question if it was intended to rely upon it. Second. But even if a Federal question was referred to in the petition, as the cause of action stated in nowise involved the construction or validity of any provision of the bankrupt act, therefore there is no right to review under section 709 of the Revised Statutes.

Both these contentions might well be disposed of by saying that the action was brought by a trustee appointed under the bankrupt law of the United States, seeking to recover what was asserted to be an asset of the bankrupt estate under that law. This, therefore, presented a Federal question, and the denial of the asserted right was a denial of a right or title specially claimed under a law of the United States. *Peck* v. *Jenness*, 7 How. 612; *Barton* v. *Geiler*, 108 U. S. 161; *Williams* v. *Heard* 140 U. S. 529; *Dushane* v. *Beall*, 161 U. S. 513; *Stanley* v. *Schwalby*, 162 U. S. 255. Whether expressions, relied upon in argument, contained in *Cramer* v. *Wilson*, 195 U. S. 408, 416, must be taken as not in harmony with the previous cases, or whether those expressions simply implied that where a right claimed by a trustee in bankruptcy in its final aspect depended

aside and declared null and void, and to have a judgment and order for the recovery of said money against said defendant in error; that the decision of this court was adverse to the claims and contentions of the said plaintiff in error, in this that said court decided that said assignment and transfer of said sum of $1,161.74 was not an unlawful preference, in violation of the said provisions of the bankrupt law, and that the said plaintiff in error was not deprived of any right under said law, and was not entitled to have said assignment and transfer set aside, and to recover the said sum of $1,161.74 from said defendant in error.

solely upon a state law, the courts of the United States would follow the construction given by the highest courts of the State to the state law, we do not deem it necessary now to say, for, without reference to the doctrine announced in the previous cases and without regard to the import of the case of *Cramer* v. *Wilson*, the contention as to the want of jurisdiction is without merit. It is to be observed that the matter certified by the Supreme Court of Ohio was made by that court a part of the record, and, if it be considered as having the force of an opinion of that court, would clearly establish the fact that the court had considered and decided a Federal question, which, apart from other considerations, would obviously give jurisdiction. But even if the action of the court be treated as not an opinion, but a mere certificate, the same result would follow. It is elementary that the certificate of a court of last resort of a State may not import a Federal question into a record where otherwise such question does not arise, it is equally elementary that such a certificate may serve to elucidate the determination whether a Federal question exists. Applying this principle, we think as the suit was brought by a trustee in bankruptcy in virtue of the power and authority conferred upon him by a law of the United States, the certificate makes clear the fact, if it were otherwise doubtful, that rights under the bankrupt law were relied upon and passed upon below. And as, this being true, the right of the trustee in bankruptcy to recover thus depended upon a law of the United States, there was clearly jurisdiction within the purview of section 709 of the Revised Statutes. *Nutt* v. *Knut*, 200 U. S. 12.

Coming to the merits, we premise that if the court below had found the facts we should be bound thereby. Here, however, as we have seen, the court below did not find the facts, but instructed a verdict for the defendant, being of the opinion that upon no view of the evidence was there a case made which would have justified a verdict for the plaintiff. This raises a question of law, which is this: Was the evidence such as would have justified the jury, under any reasonable view thereof, to

find for the plaintiff; in other words, was there sufficient evidence to warrant the submission of the case to the jury? This brings us to consider the evidence, in order to ascertain what inferences, one way or the other, might reasonably have been drawn by the jury therefrom.

Outside the testimony of the trustee, as to the insolvency of the bankrupt estate, the only evidence introduced was the testimony of John Field, manager of the Columbus Clearing House Association. By that testimony the following facts were disclosed:

Prior to the bankruptcy of Reinhard & Company that firm carried on a banking business in the city of Columbus, Ohio, and the firm, as well as the City Deposit Bank Company, were members of the clearing house association. In order to accomplish the purpose of its existence the clearing house association was an agent, for a limited purpose, of the banks composing the association, that is, its duty was to clear or balance daily the claims of the respective banks, one against the other, resulting from the checks drawn upon and held by the different members. The only source from which the association derived the means to carry on its operations was from assessments upon the members, which were made solely for the purpose of paying rent, salaries, and similar expenditures. To effect the clearings each member of the association, on banking days, sent to the clearing house, at a specified hour, the checks held by it against other banks. The checks sent by each member were considered as remaining the property of the member, the association being simply an agent for collection. Where the sum of the checks presented by one bank exceeded the sum of the checks against it presented by other members of the association, that bank had, of course, a credit balance. Where the checks presented by a particular bank against other banks were less than the sum of the checks against it presented by other banks, that bank had a debit balance. Where a bank was entitled to a credit or payment corresponding to the excess which the sum of the checks presented by it exceeded the sum

of the checks against it, the clearing house paid that bank the difference by drawing its check upon one or more of the debtor banks; and each member constituted the manager of the association its agent to draw a check or checks upon such member for any balance found to be due by that member.

In making the clearings on April 9, 1900, the day before the assignment of Reinhard & Company, the checks presented against that firm in the clearings exceeded the checks presented by it against other banks by $1,161.74, that is, Reinhard & Company, as a result of the clearing, was indebted in that amount. On the same day the City Deposit Bank presented in the clearings checks drawn upon other banks which exceeded by $10,245.63 the amount of the checks presented against that bank; in other words, as a result of the clearings it was entitled to receive the amount of money just stated. In payment of the balance the clearing house gave to the City Deposit Bank a check on Reinhard & Company for the sum due by that firm, viz., $1,161.74, and a check upon the Capital City Bank for $9,083.89. There was nothing in the evidence to show upon what bank the checks were drawn which were held by the City Deposit Bank on April 9, and which it presented for clearing on that day, nor was there anything in the evidence to show upon what banks the checks were drawn which were presented by Reinhard & Company for clearing on the same day. The check of the clearing house on Reinhard & Company for the balance due by that firm in the clearings, and which, as we have said, was given to the City Deposit Bank, was not on that day presented by the City Deposit Bank to Reinhard & Company for payment. On the contrary, the City Deposit Bank held the clearing house check until the next day. When on the morning of the tenth of April the City Deposit Bank presented its checks for clearing, it treated the clearing house check on Reinhard & Company as being entitled to participate in the clearing and included it in the checks presented for that purpose.

On the morning of April 10 the checks as presented to the

clearing house by the City Deposit Bank, including the clearing house check, exceeded the amount of the checks presented against it by other banks in the sum of $4,875.98; and the clearing house gave to the City Deposit Bank its check on the Deshler National Bank for that sum. On that day the checks presented by Reinhard & Company against other banks aggregated $2,132.19, whilst the checks against it presented by other banks amounted to $6,369.30, leaving a balance due by Reinhard & Company in the clearing of $4,237.11. Shortly after the clearing was made it developed that Reinhard & Company had made a general assignment for the benefit of their creditors and had suspended payment, and as a result, of course, it was certain that the firm of Reinhard & Company would not meet its obligations. The rules of the clearing house had provided for such a contingency as follows:

"In case of failure to respond promptly to the checks of the manager, on the part of any member of the association, they shall be immediately returned to the manager, who shall call upon the other banks or bankers to make up the sum for which payment has been refused in proportion to the amount of checks upon the defaulting member sent into the clearing house at the preceding settlement, which sums so furnished or contributed shall constitute claims in the hands of the responding members respectively against the defaulting members, and it is hereby agreed that the checks received from the clearing house by the defaulting members shall be delivered, if required, to the member owning the same without mutilation; the agency of the clearing house in the matter, it is understood, is only as a trustee, and in no case is the association to be held responsible for any loss that may occur."

All the checks drawn against Reinhard & Company and which figured in the morning settlement were returned to the clearing house with the information that Reinhard & Company had failed. The clearing house thereupon revised the previous settlements by deducting, wherever appearing, the credits which had been given for checks drawn on Reinhard & Com-

pany, which had been presented by other banks, and changed
the balances to correspond with such deductions, and the dis-
honored checks were returned to the respective banks. Having
thus returned all the checks which had been presented against
Reinhard & Company on that morning, the entire sum which
had been collected on the checks sent to the clearing house by
Reinhard & Company on the same morning for the purpose of
the clearing, viz., $2,132.19, remained in the hands of the
clearing house without any debit against it. Being thus in
possession of the sum referred to, the manager testified that
he paid $970.45 thereof to the Commercial Bank and the bal-
ance of $1,161.74 to the City Deposit Bank. With a view of
making the payment to the last named bank, the manager
went to the office of the City Deposit Bank. Conflicting ver-
sions were given of what took place at the interview, which
was had with an officer of the City Deposit Bank named Jen-
nings. The manager at first testified:

"I told him that the Reinhards had failed, and that his check
had been returned, and that I had a balance due Reinhard &
Company, and that I would substitute a check on the Capital
City Bank for this check on Reinhard, which had been re-
turned. Mr. Jennings said that he would—I think he said
he would telephone Mr. Outhwaite, and if it was all right he
would return my check, the Reinhard check. . . ."

Subsequently, referring to checks which the witness had
carried to the City Deposit Bank to give to that bank in ex-
change for the prior check of $4,875.98, he said:

"It runs in my mind . . . that I told him that I wanted
to substitute those, and that he asked me what for, and I told
him not to ask any questions—I am not sure about that—
that I wanted to substitute those checks."

Certain it is, however, that the manager took up the checks
for $4,875.98 drawn on the Deshler Bank, which had been given
to the City Deposit Bank in discharge of the credit balance in
its favor as the result of the previous clearing of that day, and
substituted for it a check for $3,714.24, drawn on the Deshler

National Bank, and in addition gave a check drawn on the Capital City Bank for $1,161.74, the exact amount of the clearing house check which had been thrown out of the clearings.

Analyzing these facts for the purpose of arriving at the inferences which may reasonably be deduced from them, this plainly results: When on the morning of April 10, 1900, as the result of the failure of Reinhard & Company, the clearings of that day required revision, the clearing house having received back the checks drawn on Reinhard & Company which it had cleared for its members that morning, made new settlements with those members based upon deductions from the original settlements of the sum of the checks which had been put in the clearings on that morning and were afterwards dishonored. The result of each new settlement was that the amount due to the member was reduced or the indebtedness shown on the original settlement was increased, according as by the original settlement the member was a creditor of or a debtor in the clearing; and, as a necessary consequence of the new settlements having eliminated all the debits against Reinhard & Company, the clearing house held, as the property of that firm, the proceeds of the checks on other banks which that firm had sent for clearing on that morning.

The statements of the manager as to what was done with the clearing house check which had been put in the clearings by the City Deposit Bank are not perfectly clear. In one aspect he returned that check to the City Deposit Bank as he had returned the other dishonored checks, and then gave to the City Deposit Bank a check for the amount due it on the revision of the clearing ($3,714.24), and also delivered a check for $1,161.74, to take up the dishonored clearing house check. In another aspect the same result was brought about without any return of the dishonored check. The mere form of the transaction, however, does not affect its nature. The payment out of this fund by the manager, in part to the City Deposit Bank and in part to another bank, therefore amounted simply to

this, that in the revision of the clearings, although the clearing
house eliminated, and returned the checks which had been
debited against Reinhard & Company, and were subsequently
dishonored, it retained and appropriated the credits arising
from the checks put in by Reinhard & Company for the purpose
of the clearing of the morning.   Having thus appropriated those
credits, it used them *pro tanto* to pay the clearing house check
on Reinhard & Company held by the City Deposit Bank as the
result of the clearings of the previous day.   But as the clearing
house had received the checks from Reinhard & Company on
the morning of April 10, 1900, for the purpose of making the
clearing on that day, such agent was without power, after re-
turning to the banks which had presented the same, the checks
debited against the firm, to hold on to the credits of Reinhard
& Company, and treat them as subject to be appropriated.
Indeed when the inferences from the proof are thus accurately
fixed it is apparent that the transaction was in substance like
the one which was held by this court in *Yardley* v. *Philler,* 167
U. S. 344, to be a misappropriation and besides to constitute
a fraudulent preference within the meaning of the National
Banking Act.

The result, however, of the proof would not be different,
even if it be conceded that under the rule, as to clearings, which
we have quoted, the clearing house would have had the power,
upon the default of one of its members, simply to call upon the
other members to pay in a *pro rata* proportion of the amount
of the check or checks which had been drawn upon the de-
faulting member, and to treat the credit standing in the clear-
ing in favor of the defaulting member as belonging proportion-
ately to the contributing members.   We say this because even
under such hypothesis the clearing house check held by the
City Deposit Bank would not have been entitled to so partici-
pate.   That check was the result of the clearings of the previous
day, and, under the hypothesis as to the meaning of the rule
in which we have indulged, the holder was only entitled to
obtain payment, *pro rata,* from those who had presented checks

against Reinhard & Company in the clearing wherein the check was given.

Was the receipt and appropriation of the $1,161.74 by the City Deposit Bank a preference within the bankruptcy law is, then, the question. It is said that it was not, because to constitute a preference under that law the transfer or payment must have been the act of the bankrupt. *Western Tie & Timber Co.* v. *Brown,* 196 U. S. 502. Here it is insisted that it cannot be so held, because there was nothing in the proof warranting the implication that the firm authorized or ratified the misappropriation or that the clearing house was the agent of the firm when it made such misappropriation. The latter proposition rests on the contention that whatever agency the association possessed in virtue of its authority to make clearings was revoked by the fact of the voluntary assignment made by Reinhard & Company before the money was appropriated to the City Deposit Bank. Whilst it may be conceded that these propositions are well founded, it does not follow that the inferences deducible from the evidence did not warrant the conclusion that under the bankrupt law of the United States there was a duty on the part of the City Deposit Bank to pay over to the trustee the sum received by it of the funds of Reinhard & Company deposited on April 10, 1900, with the clearing house for the purposes of the clearing of that date. From the inferences which we have stated were properly deducible from the evidence, it follows that the jury would have been amply justified in finding that the clearing house had made a wrongful disposition of a trust fund in favor of the City Deposit Bank, which institution had notice, either actual or constructive, of the misappropriation. *Western Tie & Timber Co.* v. *Brown, supra.*

We interpret the certificate of the Supreme Court of Ohio as establishing that that court did not rest its affirmance of the judgment rendered by the trial court against the trustees upon the mere technical ground that the petition counted upon a voidable preference, and there could not be a recovery unless

the facts constituted such preference, even although the evidence justified the inference that the money which the City Deposit Bank received from the clearing house association, under the circumstances we have stated, was the property of Reinhard & Company, which the bank by operation of the bankrupt law was obliged to account for to the bankrupt estate. We so conclude, because the Supreme Court of Ohio not only certified that its decision "was adverse to the claims and contentions of the said plaintiffs in error, in this, that said court decided that said assignment and transfer of said sum of $1,161.74 was not an unlawful preference, in violation of the said provisions of the bankrupt law," but in addition, moreover, certified that the case was decided against the trustees, because under the facts proved the trustee "was not deprived of any right under said (bankrupt) law, and was not entitled to have said assignment and transfer set aside, and to recover the said sum of $1,161.74 from said defendant in error."

*The judgment of the Supreme Court of Ohio must be reversed and the cause be remanded to that court for further proceedings, not inconsistent with this opinion.*