## FRUDENSTEIN v. FIRST NAT. BANK OF HARLINGEN, TEX.

### No. 690.

District Court, S. D. Texas, Brownsville Division.

Aug. 11, 1931.

C. M. Wunderman, of Harlingen, Tex., for plaintiff.

John C. Myrick, of Harlingen, Tex., for defendant.

KENNERLY, District Judge.

This in an action at Law by the trustee in bankruptcy of Wallace-Shannon Company, a corporation, against the First National Bank of Harlingen, Tex., to recover an alleged preference under the Bankruptcy Act (11 USCA).

With the approval of the court, the parties entered into a stipulation that the evidence in the case should be offered before one of the referees in bankruptcy of the court, and upon the record so made, submitted to the court. This course has been followed, and the case is now before me for decision, upon such record, with written briefs of the parties.

The material facts are substantially as follows:

The Wallace-Shannon Company, a corporation incorporated under the laws of Texas, was adjudged a bankrupt under the acts of Congress relating to bankruptcy on July 17, 1929, upon an involuntary petition filed against it June 29, 1929, and trustee duly appointed August 22, 1929.

Wallace-Shannon Company (hereinafter called bankrupt) was engaged in the business of buying, selling, and shipping farm products. In December, 1928, being at that time solvent, it opened an account in its name with defendant bank. Under arrangements made at the time, bankrupt was entitled to, and did, from time to time, deposit with defendant bank, and have immediately credited to its checking account, moneys, checks, drafts, etc., received, drawn, etc., by bankrupt in the course of its business. Defendant bank was to be, and was, paid a brokerage or commission of one-fourth of one per cent. of the amount of all such drafts for a period of six days, and after the expiration of such period, then interest thereon at the rate of 10 per cent. per annum. Such checks, drafts, etc., however, were to be deposited, and were deposited, in accordance with written stipulation upon deposit slips, reading as follows: "All items, including checks on this bank, will be credited subject to actual payment. Checks on this Bank found not good at close of business will be charged back to depositors."

And it was further agreed that any checks, drafts, etc., so credited to the checking account of bankrupt, and not paid by the persons drawing same, or upon whom drawn, should be, and they were, charged off and debited to bankrupt.

Under these arrangements, bankrupt did a fairly large volume of business with defendant bank, depositing many checks, drafts, etc., drawn by it on customers in various parts of the country.

On, and for some months prior to, March 19, 1929, bankrupt owed defendant bank two notes, one for $1,000, which by renewal fell due April 17, 1929, and another for $1,500, which by renewal fell due May 8, 1929. Each note contained the following language: "Full authority is hereby given the legal holder hereof to apply hereon any funds in the possession of such holder belonging to any obligor or endorser hereon to the payment of this Note, or to sell any collateral security assigned or attached, at public or private sale, without notice, at any time after maturity hereof, or at any time before maturity, in case the holder feels insecure."

On, and for some time prior to, March 19, 1929, bankrupt was insolvent, as that term is understood and defined in the Bankruptcy Act. Defendant bank learned that bankrupt was insolvent a few days prior to March 19, 1929.

At the close of business on March 18, 1929, the account of bankrupt with defendant bank showed a credit of $1,860.88, and during the day of March 19, 1929, there were sufficient credits to swell such sum to $3,516.60. This sum, however, was in part made up of checks, drafts, etc., which had been deposited with defendant bank by bankrupt, and which had at that time not been collected, and some of which were never collected. On March 19, 1929, defendant bank charged bankrupt's account with the sum of $2,500, being the aggregate amount of said notes, and credited said account with $21.39, the amount of unearned interest on said notes from that date to the dates of the maturity of the notes. Such debit of $2,500 and credit of $21.39 was made without the knowledge or consent of bankrupt, or any of its officers, and when bankrupt learned thereof some time later, it strenuously objected thereto.

Defendant bank's information regarding the insolvency of bankrupt was obtained a few days prior to March 19, 1929, at a meeting of several creditors of Bankrupt, called for the purpose of looking into the affairs of bankrupt. Several other similar meetings of creditors were held, at at least one of which a representative of defendant bank was present. There is some suggestion in the record and in the briefs that defendant bank was guilty of actual or legal fraud, in failing to disclose at one or more of such meetings that it had charged the amount of these notes against bankrupt as above indicated. An examination of the record convinces me that there is no basis for any such suggestion or charge of fraud in this respect.

At the suggestion of creditors, bankrupt opened, subsequent to March 19, 1929, a second account with defendant bank, known as "Wallace-Shannon Company Special," and opened still a third account with defendant bank, known as "United Growers Exchange." The course of dealing with respect to these two accounts was the same as with respect to the original account.

Drafts aggregating several thousand dollars deposited with defendant bank by bankrupt, and credited to the account of bankrupt, were later returned to defendant bank unpaid, and were charged and debited against the account of bankrupt. In some instances, the check of bankrupt was obtained to cover such drafts.

The net result of all these transactions, including such three accounts, was that at the time of the closing of the accounts between

defendant bank and bankrupt, bankrupt owed defendant bank the sum of $2,740.03.

After the charging by defendant bank against bankrupt's account, of the two notes, and the various unpaid drafts, defendant bank extended further large credit to bankrupt, and the above-mentioned sum of $2,740.03 remained unpaid to defendant bank as a direct result of such extension of credit.

The claim of the trustee is that the charging off, or debiting the account of bankrupt with, such unpaid drafts, and the charging of such notes against bankrupt's account, constitute an unlawful preference under the Bankruptcy Act.

1. These are but transactions which occur every day in the business dealings between banks and their customers, and do not constitute unlawful preferences under the Bankruptcy Act. They are but offsets approved and permitted by such act. New York County National Bank v. Massey, 192 U. S. 141, 24 S. Ct. 199, 48 L. Ed. 381; Studley v. Boylston Nat. Bank, 229 U. S. 526, 33 S. Ct. 806, 57 L. Ed. 1315; American Bank & Trust Company v. Morris (C. C. A.) 16 F. (2d) 845, 846.

The fact that the notes were not due at the time of such offset does not matter. Savings Bank v. Loeb (C. C. A.) 188 F. 285; Rupp v. Commerce Guardian Trust & Savings Bank (C. C. A.) 32 F.(2d) 234. Besides, the notes themselves, in effect, permit such offset at any time the holder feels insecure.

2. Further, it is clear that at the time bankrupt opened the account with defendant bank, at which time bankrupt was solvent, it was agreed that any checks, drafts, etc., deposited with defendant bank, and credited to bankrupt, and thereafter not paid, should be charged off or debited to bankrupt's account. The carrying out of this agreement, which is but the usual agreement between banks and customers, cannot be an unlawful preference.

3. The charging of the two notes against the account of bankrupt was done without the knowledge or consent of bankrupt. I incline to the view that under Western Tie & Timber Company v. Brown, 196 U. S. 506, 25 S. Ct. 339, 49 L. Ed. 573, and Rector v. City Deposit Company, 200 U. S. 409, 26 S. Ct. 289, 50 L. Ed. 529, this is not an unlawful preference.

It follows that the trustee cannot recover, and judgment will be entered for defendant bank.