

# THE ATTORNEY GENERAL
## OF TEXAS

Grover Sellers      **AUSTIN 11, TEXAS**
~~XXXXXXXXXXXXX~~RD
ATTORNEY GENERAL

Honorable John D. Reed Commissioner
Bureau of Labor Statistics
Austin, Texas

Dear Sir:            Opinion No. O-6312
                        Re: Interpretation of Section 4,
                           Senate Bill 129, Forty-eight
                           Legislature, (Art. 5172a),
                           with reference to seats pro-
                           vided for female employees.

Your letter of December 6 asks for our "inter-
pretation of Section 4, S. B. No. 129, Acts of the 48th Leg-
islature, with reference to seats for female employees."

Senate Bill No. 129 of the 48th Legislature is
Chapter 68 of the Acts of 1943, 48th Legislature, page 94;
and is brought forward in V.A.C.S.as Art. 5172a.

Sections 4, 5 and 6 of the Acts, being pertinent
to your inquiry, follows:

"Sec. 4. Every employer owning or operating
any factory, mine, mill, workshop, mechanical or
mercantile establishment, laundry, hotel,restaurant
or rooming house, theater or moving picture show,
barber shop, beauty shop, telegraph or telephone
company, or other office, express or transportation
company; the superintendent of any State institution
or any other establishment, institution or enterprise
where females are employed as provided in the three
preceding Sections, shall provide and furnish suitable
seats, to be used by such employees when not engaged
in the active duties of their employment and shall
give notice to all such employees by posting a notice
in a conspicuous place on the premises of such employ-
ment, in letters not less than one inch in height,
that all such employees will be permitted to use
such seats when not so engaged.

"Sec. 5, The four preceding Sections shall not apply to stenographers and pharmacists, nor to mercantile establishments, nor telephone and telegraph companies in rural districts, and in cities or towns or villages of less than three thousand (3,000) inhabitants as shown by the last preceding Federal Census, nor to superintendents, matrons and nurses and attendants employed by, in, and about such orphans' homes as are charitable institutions not run for profit, and not operated by the State. In case of extraordinary emergencies, such as great public calamities, or where it becomes necessary for the protection of human life or property, longer hours may be worked; but for such time not less than double time shall be paid such female with her consent.

"Sec. 6, In addition to the foregoing exemptions, in time of war and/or when the President of the United States proclaims a state of national emergency to exist, female workers employed in industries coming within the jurisdiction of the Fair Labor Standards Act of 1938 and amendments thereto, the Act of June 30th 1936, C.881, 49 Statute 2036, U.S. Code, Supplement II, Title 41, Paragraphs 35.45, as amended by Act of May 13, 1942, Public No. 552, 77th Congress, 2nd Session, commonly known as the Walsh-Healey Act, or the Act of March 3, 1931, C. 411, 46 Statute 1494, as amended August 30, 1935 C. 825, 49 Statute 1011, U.S. Code, Title 40, Paragraph 276A and Supplement V, Title 40, Paragraphs 276A-276A-6, commonly known as the Bacon-Davis Act, are exempt from the provisions of Section 1, 2, 3, 4, 5, and 13, of this Act, and female workers in such industries may be employed not exceeding ten (10) hours per day provided such hours of employment in such industries are not injurious to the health or morals of females employees, or working such hours does not add to the hazards of their occupations and such hours of employment are in the public interest. Provided, however, that in time of war and/or when the President of the United States proclaims a state of national emergency to exist, all female office employees of such employers coming within the purview of Section 6 hereof are exempt from the provisions of this Act."

We do not discuss the statutory execeptions, but limit our answer to Section 4, which compels the enumerated employers to "provide and furnish suitable seats, to be used by such employees when not engaged in the actual duties of their employment and shall give notice . . . that all such employees will be permitted to use such seats when not so engaged."

Section 4 of Senate Bill 129, though enacted as a new law, is in fact an amendment of Section 2 of Chapter 56 of the General Laws of 1915, Regular Session, 34th Legislature, page 105; which was carried into the 1925 codification as Article 1570 of Penal Code, 1925, and Article 5171, Revised Civil Statutes 1925. These articles (P.C. 1570 and R.C.S. 5171) were specificially repealed by Section 14 of S. B. 129.

In studying a statute, we seek to find out its object, purpose and effect ---the evil it aims to remedy or the mischief it aims to prevent and how.

In the epoch-making decision of Muller v. Oregon, (1907) 208 U.S. 412, 52 I. Ed 551, 28 Sup. Ct. 324, the courts took notice of the fact that woman's physical structure places her at a disadvantage in the struggle for existence. Mr. Justice Brewer, speaking for a unanimous court said:

"That woman's physical structure and the performance of maternal functions place her at a disadvantage in the struggle for subsistence is obvious. This is especially true when the burdens of motherhood are upon her. Even when they are not, by abundant testimony of the medical fraternity continuance for a long time on her feet at work. repeating this from day to day, tends to injurious effects upon the body, and as healthy mothers are essential to vigorous off-springs, the physical wellbeing of women becomes an object of public interest and care in order to preserve the strength and vigor of the race.

"...Though limitations upon personel contractual rights may be removed by legislation, there is that in her disposition and habits of life which will operate against a full essertion of those rights. She will still be where some legislation to protect her seems necessary to secure a real equality of

right. Doubtless there are individual exceptions, and there are many respects in which she has an advantage over him; but looking at it from the viewpoint of the effort to maintain an independent position in life, she is not upon an equality. Differentiated by these matters from the other sex, she is properly placed in a class by herself, and legislation designed for her protection may be sustained, even when like legislation is not necessary for men and could not be sustained.... Even though all restrictions on political, personal and contractual rights were taken away, and she stood, so far as statutes are concerned, upon an absolutely equal plane with him, it would still be true....that her physical structure and a proper discharge of her maternal functions - having in view not merely her own health, but the well-being of the race - justify legislation to protect her from the greed as well as the passion of man...The limitations (of the) statute... are not imposed solely for her benefit, but also largely for the benefit of all. Many words cannot make this plainer. The two sexes differ in structure of body, in the functions to be performed by each, in the amount of physical strength, in the capacity for long-continued labor, particularly when done standing, the influence of vigorous health upon the future well-being of the race, the selfreliance which enables one to assert full rights and in the capacity to maintain the struggle for subsistence. This difference justifies a difference in legislation and upholds that which is designed to compensate for some of the burdens which rest upon her."

The constitutionality of the law providing for seats for women when not actively engaged was upheld in Glanzes v. State (1020), 87 Tex. Criminal Rep. 158, 220 S. W. 95, where the court said:

"The prosecution is for violation of the provisions of chapter 56 of the Acts of the Thirty-fourth Legislature (Vernon's Ann. Pen. Code 1916, arts. 1451h-1451m), the specific charge being that the appellant, a keeper of a restaurant, 'did fail and refuse to provide and furnish suitable seats to be used by his female employees when not

engaged in the active duties, ' and that he did not give notice to all of the females so employed by posting in a conspicuous place notice described in the statute.

"In motion to quash the indictment, attacks are made upon the validity and constitutionality of the law. We are furnished with no brief or citation of authorities supporting the criticism, and we are aware of no reason that the act is not a lawful exercise of legislative authority, The right of the Legislature, in the exercise of the police power, to pass laws to safeguard the health of women employees has been so often affirmed by the courts that it cannot now be considered an open question. (Citing authorities). We find nothing in the provision questioned in the present law which would condemn it as unreasonable...".

"The ordinary signification shall be applied to words" in construing our statutes; Art. 10, Sec. 1. The term "suitable" is defined as follows:

"Suitable: adj. That is suited to one, one's needs, wishes, or conditions.

"syn. - Accordant, agreable, appropriate, competent, correspondent, compatible, consant, congrous, consistent." --Webster's New International Dictionary, 2d ed. p. 2522.

"suitable: adj. fitting, becoming, appropriate or proper.

"syn. - accordant, convenient, adequate, appropriate, compatible." The Winston Simplified Dictionary, Encyclopedic Edition, p. 993.

"suitable: a; appropriate, applicable.

"syn: adequate, appropriate, becoming, convenient." ----Funk & Wagnells College Standard Dictionary, p. 1126.

The writer has carefully checked with the definitions of the term "suitable" found in Words and Phrases, permanent edition, Vol. 40, pp..664, et seq. These judicial definitions conform with the above dictionary definitions.

The term "suitable" as used in this statute is an elastic term, a matter of application- - -depending upon the character and the kind of work and is a fact question. Such words are necessary in modern legislation, because of the need of providing standards flexible enough to insure effective application of legislative policy to changing circumstances.

The things done, in compliance with the statute, must be fit and appropriate for the end to which it is to be devoted. It means actually, practically and healthfully fit. The seats should be in good condition, comfortable, sufficient in number and conveniently placed. What would be suitable seats, must in the last analysis depend much upon the kind of employment, the age of the worker and dependent -conditions as will fit each character of employment.

The term necessarily involves the idea that the seats provided be fit and sufficient in number and in kind and so placed as will accomplish the end sought by the statute. The term "suitable" as used with reference to the employer's duty to provide suitable seats for the female employees means compatible with the safety, health, convenience and comfort of his said employees.

We trust that the above fully answers your inquiry.

Very truly yours

Approved Dec. 15, 1944        ATTORNEY GENERAL OF TEXAS

s/Grover Sellers              s/ David Wuntch

Attorney General of Texas     By

                                    David Wuntch
                                    Assistant

Approved: Opinion Committee
          By GWY
          Chairman

DW:zd:cg